JOHN DAY, complainant-respondent,

*v.*

UNITED STATES CAST IRON PIPE AND FOUNDRY COMPANY,
defendant-appellant.

[Submitted May term, 1924.   Decided October 20th, 1924.]

The judges being equally divided on the question whether
the judgment should be reversed, the judgment is affirmed
solely because of such division, which renders any opinion by
the court impossible.

On appeal from a decree of the court of chancery advised
by Vice-Chancellor Backes, whose opinion is reported in
*95 N. J. Eq. 389.*

*Mr. Frederic J. Faulks* and *Mr. J. Edward Ashmead,* for
the defendant-appellant.

*Mr. J. W. Rufus Besson, Mr. George C. Fraser* and *Mr.
Schuyler M. Meyer,* for the complainant-respondent.

PER CURIAM.

The decree under review herein is affirmed by an equally
divided court.

*For affirmance*—TRENCHARD, PARKER, BLACK, WHITE,
GARDNER, VAN BUSKIRK, McGLENNON—7.

*For reversal*—THE CHIEF-JUSTICE, MINTURN, KALISCH,
KATZENBACH, CAMPBELL, LLOYD, KAYS—7.

Syllabus by White, J.

1. Dividends (not in liquidation) upon the capital stock of a cor-
poration, whether common or preferred, can only be paid out of net
profits or surplus.

2. Generally speaking, the distinction between cumulative and non-cumulative preferred stock is that dividends upon the former have at all times and for all years, past and present, until paid, priority in payment over any and all unpaid dividends upon common stock, whether the net earnings for any particular past or present year were or were not sufficient to pay the stipulated cumulative dividend upon preferred stock for that year; whereas, the like priority of dividends upon non-cumulative preferred stock (wholly or partially, as the case may be) is limited to the unpaid dividends for those years when such net earnings were sufficient (wholly or in corresponding part) to pay such dividends.

3. While the first part of section 18 of the Corporation act (Revision of 1896) confers a broad discretion upon corporators in giving names and preferences, and restrictions and qualifications thereof, to the various classes into which they are authorized to divide the shares in the capital stock of a corporation, the second or latter part of that section fixes upon the corporation a definite contractual obligation to pay in preference or priority to any dividends upon common stock the definite dividend fixed by the articles of incorporation (cumulative or non-cumulative, as the case may be) upon that class or those classes, the preference of which bring it or them within the proper designation of "preferred."

4. Where stock was expressly, and without qualification of any kind, designated in the articles of incorporation as "preferred stock," and its principal or par value given preference over the common stock on liquidation, and its dividends limited to a fixed rate not exceeding the eight per cent. limit specified in the Corporation act for preferred stock, and such dividends for any fiscal year were given preference or priority of payment out of the surplus net profits for such fiscal year over dividends upon common stock for that year— *Held*, that a provision in the articles of incorporation and in the by-laws, authorizing the payment of a dividend upon the common stock out of the surplus net profits of any fiscal year after the stipulated dividend upon the preferred stock for that year had been paid, but without saying that this might be done while earned but withheld dividends for previous years upon the preferred stock remain undistributed in the reserve working capital fund, does not entitle the corporation to pay dividends to common stockholders until withheld earned and available dividends for previous years upon preferred stock have been distributed to the preferred stockholders.

5. The dividend priority for preferred stock fixed by section 18 of the Corporation act is the declaration of a legislative policy to encourage the investment of capital in business enterprises upon a contingent-upon-profits and limited-dividend-rate basis, and as such cannot be overcome (if it may be legally overcome at all, which is not here decided), except by language so clear and challenging that its purpose can neither be misunderstood nor overlooked.

6. In the absence of fraud, either actual or constructive, preferred stockholders, as well as common stockholders, are dependent for the

establishment of their right to dividends, upon affirmative action of the board of directors; but where the board of directors has fixed the fact of net earnings by transferring them, during the years in question, from the profit and loss account to the "working capital reserve" account, and then years afterward, but, while such earnings remain in that account, has, by declaring a dividend upon the common stock, established the additional fact that there are funds in the surplus of the corporation "available" for dividend purposes. *Held,* that there was thereby established affirmative action of the board of directors violative of the priority rights of the preferred stockholders whose dividends had not been paid for the years in question, and that the payment of the proposed dividend on the common stock was properly enjoined.

This opinion was delivered by

WHITE, J.

This is a suit in the court of chancery by a holder of non-cumulative seven per cent. preferred stock in the defendant corporation, to enjoin the latter from paying a dividend to its common stockholders out of net earnings for the fiscal year 1922 (the preferred stockholders having already been paid their stipulated seven per cent. dividend out of the earnings for the fiscal year), while preferred stock dividends for previous years (for which such seven per cent. was not paid) earned during those years, but withheld and placed in a "working capital reserve" fund by the board of directors, remained undistributed as dividends to the preferred stockholders. The defendant corporation asserts that it has the authority by its charter and by-laws to do just that thing.

The relevant charter provisions, after fixing the authorized capital stock at $30,000,000, of which $15,000,000 dollars "shall be preferred stock" and $15,000,000 "shall be common stock," provded as follows:

"The preferred stock shall be entitled, out of any and all surplus net profits, whenever declared by the board of directors, to non-cumulative dividends at a rate not to exceed seven per cent. per annum for the fiscal year beginning on the 1st day of June, 1899, and for each and every other fiscal year thereafter. payable in preference and priority to any payment of any dividend on the common stock for such fiscal year. In the event of the dissolution of the corporation the holders of the preferred stock shall be entitled to

receive par value of their preferred shares out of the surplus funds of the corporation remaining after payment of its debts, before any payment shall be made therefrom to the holders of the common stock.

"The common stock shall be subject to the prior rights of the holders of the preferred stock as herein declared. If, after providing for the payment of full dividends for any fiscal year on the preferred stock, there shall remain any surplus net profits for such year, any of such net profits of such year and of any other fiscal year, after full dividends shall have been paid on the preferred stock, shall be applicable to such dividends upon the common stock as from time to time shall be declared by the board of directors; and out of any such surplus net profits, after the closing of any fiscal year, the board of directors may pay dividends upon the common stock of the corporation for such fiscal year, but not until the dividends upon the preferred stock for such fiscal year shall have been actually paid or provided for and set apart;" and

Article 13 of the by-laws provides:

"The directors may, from time to time, set aside all or any portion of the net profits of the corporation as and for additional working capital; and the directors may also, from time to time, as in their discretion seems best, diminish such working capital by transferring such net profits as may have been set aside therefor back into the profit and loss account. The directors may, either annually, semi-annually or quarterly, as in the discretion of the directors may seem best, declare a dividend or dividends on the preferred stock of the corporation; provided, however, that the aggregate amount of dividends paid to the preferred stockholders out of the profits of any fiscal year shall not exceed the sum of seven per cent. (7%) on the preferred stock.

"At the expiration of each fiscal year of the corporation, the directors may declare a dividend among the common stockholders of the corporation out of the accumulated profits exceeding the amount reserved for working capital as aforesaid, and such dividends may be made payable as and when the directors may determine; but such dividends shall only be paid after full dividends shall have been paid or provided for upon the preferred stock for such fiscal year."

The learned vice-chancellor, in advising the prayed-for injunction, held that if defendant's contention were, in fact, substantiated by a proper interpretation of these charter and by-law provisions, such provisions were, to that extent, illegal, because, as he thought, in conflict with the express requirements of section 18 of the Corporation act (Revision of 1896), in effect in 1899, when defendant was incorporated, which provides:

"Every corporation shall have power to create two or more kinds of stock, of such classes, with such designations, preferences * * * or restriction or qualification thereof as shall be stated and expressed in the certificate of incorporation; * * * but at no time shall the total amount of the preferred stocks exceed two-thirds of the actual capital * * * and the holders thereof shall be entitled to receive, and the corporation shall be bound to pay thereon, a fixed yearly dividend, to be expressed in the certificate, not exceeding eight per centum, payable quarterly, half-yearly or yearly, before any dividend shall be set apart or paid on the common stock, and such dividends may be made cumulative; * * * *"

Apparently, under what may be called the first half of this section, incorporators may, in their discretion, divide the capital stock of a proposed corporation into two or more classes, and they may give each class such name and such preferences as they desire, and, again, they may limit or qualify such name and preferences by such restrictions or qualifications as to them shall seem best; but under the second half of the section, if preferred stock shall be created, it cannot exceed in quantity two-thirds of the whole capital stock, and the payment of fixed dividends thereon, so far as priority of such dividends over *any* dividends upon common stock is concerned, is made a contractual obligation of the corporation.

If it were not for the very wide discretion given incorporators under the first half of this section 18, there would be little difficulty in arriving at the meaning of and applying what may be called the second half of the section, because in the absence of refining differences of designation and preferences, and restrictions and qualifications thereof, preferred stock, so far as the payment of dividends is concerned, may, speaking generally, be said to embrace cumulative preferred stock and non-cumulative preferred stock, the distinction between the two being that while dividends (not in liquidation) upon each can, of course, only be paid out of profits or surplus (*McGregor* v. *Home Insurance Co., 33 N. J. Eq. 181; Mills* v. *Hendershot, 70 N. J. Eq. 258*), the dividends upon cumulative preferred stock have at all times and for all years, past and present, until paid, priority in payment over any and all unpaid dividends upon common stock,

whether the net earnings for any particular past or present year were or were not sufficient to pay the stipulated cumulative dividends upon preferred stock for that year; whereas, the like priority of dividends upon non-cumulative preferred stock (wholly or partially, as the case may be) is limited to the unpaid dividends for those years when such net earnings were sufficient (wholly or in corresponding part) to pay such dividends. This distinction renders it self-evident that the suggestion made by counsel that complainant is contending for cumulative preferred stock rights for his non-cumulative preferred stock is without merit. The foregoing general classification, however, is obviously subject to considerable modification under the broad discretion conferred by the first half of section 18. It would seem that classes of stock might be created and designated as common, but at the same time be given certain preferences over other classes of stock likewise designated as common, and, on the other hand, it may possibly be that other classes of stock may be created and designated as preferred, when, in fact, their stipulated preferences may not bring them within the proper classification of preferred stock referred to in the second half of the section.

We are inclined to think, therefore, that a careful interpretation of the wording of the preferences, as well as of the designation, and also of other attributes, is necessary in each instance, in order to decide whether the so-called preferred stock of a corporation falls within the requirements of the second half of the eighteenth section.

The preferred stock here involved is expressly made noncumulative, and in a former case (*Bassett* v. *United States Cast Iron Pipe and Foundry Co., 75 N. J. Eq. 539*), involving a construction of these same charter and by-law provisions, this court, in denying cumulative dividend rights to the preferred stockholders, and at the same time overruling the contention of the corporation that earned but withheld preferred stock dividends became the property of the common stockholders, said, in an opinion by the chief-justice: "On the one hand the corporation has no right to accumulate

a reserve fund from earnings which would otherwise be paid out as dividends to the holders of common stock, and afterward use it to pay dividends to the preferred stockholders, when the net profits of the year for which the dividend is declared are not sufficient for that purpose. On the other hand, when the reserve fund is accumulated, in whole or in part, by the cutting down of dividends, which would otherwise have been paid to preferred stockholders, that fund, so far as it represents moneys so retained, is available for the payment of subsequent dividends upon the preferred stock. To yield to the contention of the complainant would be to permit the directors of the corporation to defraud the preferred for the benefit of the common stockholders, while to sanction the claim of the defendant would be to put it in the power of the directors to defraud the common for the benefit of the preferred stockholders," and in the case of *Moran* v. *United States Cast Iron Pipe and Foundry Co.*, affirmed by this court at the present term upon the opinion of Vice-Chancellor Backes, it was held that the working capital reserve fund here involved, partially made up as it is of a definite sum withheld by action of the board of directors from earned dividends on the preferred stock of previous years, is, nevertheless, in fact a part of the surplus of the corporation, and that a belated dividend upon the preferred stock was properly declared out of the withheld preferred stock dividends portion of it by the board of directors in the year 1922, although the preferred stock had already received its stipulated seven per cent. of dividends out of the earnings of that year.

In view of these decisions and of this corporation's general charter provisions expressly designating without qualification the stock here involved as "preferred stock," and limiting its interest in earnings to a definite percentage in accordance with the second half of section 18 of the Corporation act, and also giving it priority in payment of principal at par out of assets in case of dissolution, we think the stock obviously appears to fall within that class designated in the act as preferred, which the legislature (in its desire to assist

business enterprises by encouraging the investment therein of capital at a limited and contingent-upon-profits interest rate) clothed, except as against creditors, with many of the attributes of bonds, and which it clearly intended expressly to protect in the manner specified in the second half of the eighteenth section above referred to.

This being so, if the policy of the legislation is to be defeated, and the seeming security thereby tendered is to be destroyed by the language of the preference clause or clauses of the articles of incorporation, that language must be so clear and challenging that its purpose can neither be misunderstood nor overlooked. Such is not the language here involved. The most that can be said of it in behalf of the corporation's contention is, that it says that the board of directors may declare a dividend upon common stock out of the earnings of a fiscal year after the stipulated seven per cent. on the preferred stock for that year has been paid. But it does not anywhere say that this may be done while earned available but withheld dividends upon the preferred stock for previous years remain undistributed in the surplus of the corporation. That it must say this, in order to accomplish any such purpose (assuming that such purpose legally can be so accomplished, as to which we express no opinion), seems to us too plain to require argument. Such a provision would be in conflict with the secured priority idea underlying the legislative scheme or policy. It would, at least, to a marked extent, contradict the designation "preferred" which the corporation used without qualification, and which the legislature said meant and secured a certain priority, which such a provision would destroy. How much capital would have been invested in the preferred stock of this corporation if its charter had expressly provided that the board of directors might, wherever and as long as they might see fit, apply all the net earnings to a permanent increase of its capital (which increase, of course, would belong to the common stockholders on dissolution and would increase only their dividends in the meantime), instead of paying dividends to the preferred stockholders? Naturally, none at all, and yet that is exactly,

in effect, what the corporation here claims it may do in the absence of such a clause and in the face of its charter and legislative obligation to pay non-cumulative dividends of seven per cent. each year when earned, and, in the judgment of the board, available, to its preferred stockholders. We think, therefore, that the corporation's charter and by-law provisions do not authorize the payment to the common stockholders of the proposed dividend, while earned available and unpaid dividends on the preferred stock remain undistributed to the preferred stockholders in the corporation's surplus.

There remains for consideration but one point, viz.: Has the status of these preferred stock unpaid dividends for previous years been so fixed and ascertained as available net profits for dividend purposes by action of the board of directors, as to vest in the preferred stockholders the right here sought to be enforced? We think it has. We fully realize that a mere allegation that dividends have been earned is not sufficient, for, in the absence of fraud, actual or constructive (neither of which is here charged), the dividend rights of stockholders, whether preferred or common, are dependent in this respect upon affirmative action of the board of directors. *Stevens* v. *United States Steel Corporation, 68 N. J. Eq. 373; Blanchard* v. *Prudential Insurance Co., 80 N. J. Eq. 209.* But this is not an attempt to force the payment of an undeclared dividend on the preferred stock. The effort here is to prevent the payment of a dividend on the common stock in violation of the priority rights of the preferred stockholders. In the absence of fraud, therefore, two things are essential to accomplish this, namely—*first,* affirmative action of some kind by the board of directors establishing the fact of earnings for the previous years, now available for the payment of the withheld or "passed" dividends for those years upon the preferred stock; and sec*ond* affirmative action of the board of directors declaring a dividend upon the common stock in violation of the priority rights thus established of the preferred stockholders. That the board declared a dividend upon the common stock is estab-

lished, and is not questioned, in fact it is the thing here complained of. As to the first essential, we think the fact of net earnings for the years in question was properly established by the action of the board of directors in taking the amounts in question out of the profit and loss accounts for those years and placing them in the "working capital reserve," and that the present "availability" of those net earnings (to the extent of the amount which would be required to pay the proposed dividend on the common stock), for the payment of the thus earned but unpaid dividends on the preferred stock for those years, is established by the present declaration of a dividend upon the common stock. This being so, the priority right of the preferred stockholders to receive the withheld dividends before any dividend on the common stock may be paid, is controlling. It may be that the payment of the withheld dividends on the preferred stock will reduce the reserve working capital fund below the mark which the board of directors may think necessary for the best interests of the business of the corporation, but if that is so they should make up the shortage from the money they proposed to use to pay a dividend upon the common stock instead of paying the latter dividend in violation of the priority rights of the preferred stockholders.

The decree appealed from is affirmed.

NOTE.—One of the judges was absent when this case was conferred upon and the opinion assigned, and the foregoing opinion was prepared in pursuance of such assignment. The absent judge was present upon opinion day, however, and voted for reversal, thereby reducing the majority of one for affirmance, to a tie vote for affirmance.

This opinion is therefore filed as expressing the views of the members of the court who voted for affirmance.